REQUESTED BY: Senator Jim Jensen, Chair Health and Human Services Committee Nebraska State Legislature
OPINION REQUEST:
You requested our opinion on the following questions:
 Question 1. Is a prescription or medical order required prior to dispensing or administering medical oxygen?
 Question 2. Is someone who dispenses medical oxygen engaged in the "practice of pharmacy?"
Your opinion request also refers to LB 797 and Health and Human Services Committee amendments, which were indefinitely postponed at the end of the 2000 legislative session. Your request mentions the committee amendments permitted the establishment of "delegated dispensing agreements, purportedly to allow for the dispensing of medical oxygen by someone other than a pharmacist pursuant to such agreement."
CONCLUSIONS:
Answer to Question 1. A prescription or medical order is required prior to dispensing or administering medical oxygen to the ultimate patient user in nonemergency situations under federal Food and Drug Administration rules and policy guidelines.
Answer to Question 2. Generally, one who "dispenses" medical oxygen is engaged in the "practice of pharmacy" with the understanding that "dispensing" contemplates the person is filling a medical order or prescription for medical oxygen for a patient.
ANALYSIS:
"Medical oxygen" is not defined by Nebraska statute. Neb. Rev. Stat. § 71-1,142(25) (Cum. Supp. 2000) of the pharmacy practice statutes of Nebraska's Uniform Licensing Law defines a "prescription drug" to mean:
 . . .(a) federal law is required, prior to being dispensed or delivered, to be labeled with either of the following statements: (i) Caution: Federal law prohibits the dispensing without prescription; or (ii) Caution: Federal law restricts this drug to use by or on the order of a licensed veterinarian or (b) a drug which is required by any applicable federal or state law or regulation to be dispensed on prescription only or is restricted to use by medical practitioners only. (Emphasis added.)
Thus, Section 71-1,142(25) requires reference to the federal drug regulation framework and federal law to determine if "medical oxygen" is a prescription drug for purposes of Nebraska's pharmacy statutes.
In 1972, the Food and Drug Administration ("FDA") published a proposed policy statement on oxygen (hereafter "Proposed Statement of Policy"). 37 FR 5504 (February 29, 1972). The Proposed Statement of Policy addressed labeling requirements for compressed oxygen containers with distinctions for oxygen used for environmental, industrial, aircraft, medical, and medical emergency purposes. The Proposed Statement of Policy noted developments in the use of oxygen containers which prompted the FDA "to clarify labeling of devices intended to deliver oxygen for drug use." The Proposed Statement of Policy stated that the FDA had long "expressed the opinion that in light of the general use of medicinal gases such articles should be regarded as prescription drugs and, therefore, should be labeled with the prescription legend." The FDA's 1972 Proposed Statement of Policy was never adopted.
In 1986, the Compressed Gas Association submitted Citizens Petition #87P-0167/CP1 to the FDA requesting a final agency policy ruling on the status, distribution, and labeling of emergency oxygen. Eventually, the FDA Deputy Commissioner for Policy issued a policy statement in September, 1996, which stated in part as follows:
 Although it later withdrew this proposal, FDA still considers the 1972 Proposed Statement of Policy, as modified herein, to be its policy with respect . . . to the status of medical oxygen. Accordingly, FDA's policy continues to be . . . labeling as set forth in the 1972 Proposed Statement of Policy (including the warning statement), with the indications for use as follows:
For emergency use only when administered by properly trained personnel for oxygen deficiency and resuscitation. For all other medical applications, Caution: Federal law prohibits dispensingwithout prescription. (Emphasis added. See, previously emphasized language of Neb. Rev. Stat. § 71-1,142(25) defining a prescription drug.)
The next FDA action of significance was a 1994 FDA proposed rule published in the Federal Register. The proposed rule included the following statement:
Questions have also been raised about the applicability of PDMA [Prescription Drug Marketing Act of 1987] to the drug oxygen, U.S.P. (U.S. Pharmacopeia). FDA advises that oxygen, U.S.P., is a prescription drug subject to section 503(b) of the act [Federal Food, Drug, and Cosmetic Act], and, therefore, within the scope of PDMA and these proposed regulations. 59 FR 11842 at 11844 (March 14, 1994).
More than five years later, on December 3, 1999, FDA issued its final rule which states, in part, as follows:
In the March 1994 proposal (59 FR 11842 at 11844), the agency clarified that oxygen, USP (United States Pharmacopeia), is a prescription drug subject to section 503(b) of the act and, therefore, within the scope of PDMA [Prescription Drug Marketing Act of 1987] and the proposed regulations. Since the publication of the March 1994 proposal, questions have been raised about the applicability of PDMA to medical gases generally.
FDA advises that all medical gases (i.e., oxygen, USP; . . . and medical air, USP) are prescription drugs within the scope of PDMA and the State licensing guideline final rule. [Emphasis added. Final rule applicable to wholesale distributors of medical gases, including medical oxygen, with exception "for those entities that exclusively distribute medical gases to patients under a valid prescription."]
Nebraska's statutory method of incorporating the federal system's prescription drug classification for Nebraska's pharmacy practice laws results in the conclusion that medical oxygen is a prescription drug requiring a prescription or medical order prior to dispensing or administering to the ultimate patient user, in nonemergency situations, under FDA rules and policy guidelines.
Your second question, whether someone is "practicing pharmacy" by "dispensing" medical oxygen, involves a review of applicable pharmacy practice statutes and exceptions.
The "practice of pharmacy" is defined by Neb. Rev. Stat. §71-1,142(2) to include "the . . . dispensing . . . of drugs . . . " "Drugs" are defined by Neb. Rev. Stat. § 71-1,142(19) to include "prescription drugs." Thus, the general answer to your second question is that a person who "dispenses" medical oxygen is practicing pharmacy. However, further explanation is needed because of the statutory terms of art applicable to pharmacy and because of the statutory exceptions to the practice of pharmacy.
The words "dispense or dispensing" are defined by Neb. Rev. Stat. § 71-1,142(11) to mean "the preparation and delivery of a drug . . . pursuant to a lawful order of a medical practitioner in a suitable container appropriately labeled for subsequent administration to or use by a patient or other individual entitled to receive the drug or device." One who "dispenses" medical oxygen is necessarily doing so pursuant to a medical order or prescription for use by or on a particular patient.
It is important to mention that the word "dispense" is not synonymous with "distribute" or "administration." Neb. Rev. Stat. § 71-1,142(12) defines "distribute" to be "delivery of a drug . . . other than by administering or dispensing." Neb. Rev. Stat. §71-1,142(2) defines "administration" to be "direct application of a drug . . . by injection, inhalation, ingestion, or other means to the body of a patient."
You are referred to Neb. Rev. Stat. § 71-1,143, which contains exceptions to the practice of pharmacy, including exceptions for medical practitioners, advanced practice registered nurses, and others engaged in conduct as further defined by the statute. Pharmacy technicians also may perform tasks involving the practice of pharmacy under statutory guidelines set out by Neb. Rev. Sec. §71-1,147.33.
The final subject of your opinion request refers to the concept of pharmacy "delegated dispensing agreements" provided for by the Health and Human Services Committee amendments to LB 797. The pharmacist's role in the medication-use process is primarily that of a dispenser of medication to a patient pursuant to medical orders or a prescription. Nebraska has enacted more recent requirements for patient counseling and drug therapy review prior to dispensing. Neb. Rev. Stat. § 71-1,147.35.
The "delegated dispensing agreement" provisions of the HHS Committee amendments to LB 797 are broadly drafted to allow others to "perform certain dispensing functions authorized by the pharmacist or pharmacists." Section 106 of AM 2173 to LB 797. Section 159 of the HHS Committee amendments exempts from the practice of pharmacy "persons authorized to dispense drugs or devices pursuant to a delegated dispensing agreement." The concept of delegated dispensing agreements woven into the HHS Committee amendments are clearly broader than allowing only dispensing of medical oxygen by someone other than a pharmacist. Whether the legislature desires to grant pharmacists such broad delegation dispensing authority and adopt such a broad approach to address a limited issue is a legislative policy matter.
Sincerely,
DON STENBERG Attorney General
James D. Smith Assistant Attorney General